

# IN THE
# TENTH COURT OF APPEALS

### No. 10-18-00044-CR

**JOE LEE HODGES,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**

**From the 440th District Court**
**Coryell County, Texas**
**Trial Court No. 17-24424**

## MEMORANDUM  OPINION

Appellant Joe Lee Hodges was convicted by a jury of the felony offense of assault family violence by strangulation.  Hodges pleaded true to an enhancement paragraph, and the jury assessed a sentence of twenty years' incarceration.  Hodges challenges his conviction in two issues:  (1) the evidence was insufficient; and (2) trial counsel provided ineffective assistance.

*Evidence at Trial*

Hodges was convicted of choking his long-time roommate and partner "Girlfriend" on October 6, 2017.[1] Police were directed to Hodges's apartment after receipt of a 9-1-1 call from one of Hodges's neighbors. The neighbor testified that she was outside of her apartment conversing with a friend when she heard glass breaking around the corner. The neighbor and her friend went around the corner to see what was happening and saw broken glass on the ground outside Hodges's apartment. The neighbor knew both Hodges and Girlfriend and saw them struggling in their apartment through the broken window. The neighbor testified she saw Hodges with his hands around Girlfriend's throat, and Girlfriend yelled for the neighbor to call 9-1-1 because Hodges was trying to kill her. The neighbor yelled at Hodges to stop choking Girlfriend, but he ignored her. The neighbor said it looked like Girlfriend was in a daze while Hodges's hands were around her throat, and Girlfriend was gasping for breath. The neighbor saw Hodges and Girlfriend fall to the floor and saw Hodges bring his fist down toward Girlfriend, although the neighbor could not see them clearly on the ground. The friend retrieved the neighbor's cell phone and called 9-1-1. The neighbor then spoke with 9-1-1 telling them what she had seen and requesting the police. Hodges did not stop attacking Girlfriend until the police arrived.

---

[1] As Girlfriend identifies as female, we will use feminine pronouns.

Three Copperas Cove Police officers testified that Hodges and Girlfriend were well known to them and the department due to the number of domestic violence calls the pair had generated. During the majority of those calls, both were drinking, and both were uncooperative with the police. The officers saw the broken glass on the sidewalk in front of Hodges's apartment. Girlfriend was covered in dried and wet blood, and she was crying and extremely frantic. Girlfriend also had a large, fresh bruise on her left side that the officer could see because she was only wearing underwear. One officer testified that Girlfriend told him Hodges assaulted her. Based on Girlfriend's injuries, the officers made the decision to arrest Hodges even though Girlfriend did not want him arrested.

Another officer spoke with Hodges and noticed injuries on Hodges's left forearm and left knuckles. The officer testified that the abrasions on the knuckles could indicate Hodges had been punching someone or something. Hodges told the officer that he had been sleeping when Girlfriend broke the window. The officer testified that Hodges appeared to be under the influence of something but that he could not smell alcohol or see any dilation in Hodges's eyes to indicate drug use.

The third officer on the scene spoke to Girlfriend, who was more cooperative after Hodges was arrested and taken to jail. Girlfriend provided the officer with details of being assaulted that were consistent with what he had learned about the event. The officer asked Girlfriend if she wanted a protective order and she agreed. The protective order that was issued was admitted as State's exhibit five.

Girlfriend testified at trial and described herself as an alcoholic and an abuser of drugs. She testified that she and Hodges had been together for approximately fifteen "wonderful" years. Girlfriend testified that she did not remember the assault, she did not know how the window was broken, she did not remember the police coming to the apartment the day of the assault, she did not remember speaking with the police or telling them that Hodges choked her, and she did not know why the neighbor would call 9-1-1. Girlfriend also testified that the blood smeared on her face was not blood but was a result of her eczema which caused her skin to look chapped and red. She further noted that she bled easily because she is anemic. Girlfriend also denied that Hodges had caused her any bodily injury. She testified, "I was quite fine days later. I mean, there was nothing wrong with me. I miss him very much."

Girlfriend could not remember how she was injured that day but explained that a lot of bruising was because she stumbled and fell a lot due to her intoxication. Girlfriend also noted that her alcoholism affected her memory. Girlfriend described herself as a "mean drunk." She later explained what she meant: "I antagonize. I belligerently attack with my words. I make fun. I try to be - - I'm different when I'm drunk." Girlfriend also noted that she is not fun to be around when she is drinking. Girlfriend did not describe herself as physically violent, although she noted that even her family hit her when she was intoxicated.

A registered nurse, who is also certified as a forensic nurse examiner and a sexual assault nurse examiner, testified that pressure applied to the neck can alter or constrict the blood flow to and from the brain and can also interfere with an individual's breathing. Death can occur if suppression of breathing and blood flow continues four to five minutes. The nurse further testified that it does not require a great deal of pressure to occlude an individual's breathing or blood flow by squeezing someone's neck. One symptom that an individual's breathing has been occluded is they begin gasping for breath. The nurse also noted that less than fifty percent of strangulation patients exhibit visible injuries. The nurse, who was certified as an expert, did not examine Girlfriend or review the photographs of her injuries.

Hodges testified that Girlfriend broke the window in the apartment and that he was injured on the broken glass. Hodges also noted that Girlfriend is an alcoholic and drinks all the time. Hodges denied that he assaulted Girlfriend. During his direct testimony, he provided the following exchange:

> Q. Okay. And at any time - - did you at any time put your hands around [Girlfriend's] neck?
>
> A. Never. Never. I promise to - - God will strike me to death if I did. I did not put hands on {Girlfriend].
>
> Q. Did you ever strike [Girlfriend] with your hands?
>
> A. No.
>
> Q. You didn't strike - -

A.    No.

Q.    - - with your right hand or your left hand?

A.    No.

. . .

Q.    But that morning, again, you never struck - -

A.    No.

Q.    - - or harmed [Girlfriend]?

A.    Never.  Never.

Hodges had no explanation for why the neighbor would lie about seeing him choke Girlfriend.

On cross-examination, the State elicited testimony from Hodges that he had been convicted of assaulting Girlfriend on two prior occasions and was out on bail for another assault against her when arrested for the present offense.

*Discussion*

A.  Sufficiency of the Evidence.  Hodges argues that the evidence against him is insufficient to support his conviction.[2]  The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the

---

[2] Hodges specifically argues that the evidence is both legally and factually insufficient.  The Court of Criminal Appeals eliminated the separate tests in *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010).

essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*, 443 U.S. at 319, 99 S.Ct. 2781); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.; see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

As relevant to this case, a defendant commits the third-degree-felony offense of family-violence assault by occlusion if he intentionally, knowingly, or recklessly causes bodily injury to a member of his family or household and the defendant intentionally, knowingly, or recklessly impedes the normal breathing or circulation of the blood of that person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth. TEX. PENAL CODE ANN. § 22.01(b).[3]

Hodges argues that the evidence is insufficient to sustain the verdict because no rational factfinder could have found that Hodges intentionally, knowingly, or recklessly caused bodily injury to Girlfriend. The testimony of the neighbor was sufficient for the jury to determine that Hodges intentionally impeded Girlfriend's normal breathing by applying pressure to her throat or neck. The neighbor testified that Hodges had his hands around Girlfriend's throat, and she was gasping for air. The photographs of Girlfriend's injuries and the testimony of the police also supported the jury's determination that Girlfriend suffered serious injury as a result of Hodges's assault. The jury was free to find Girlfriend's testimony that she had suffered no injury not credible. The jury may infer that a victim felt or suffered physical pain "because people of common intelligence understand pain and some of the natural causes of it." *Brison v. State*, No. 05-10-00279-

---

[3] Section 22.01 has been amended since the offense was committed in this case, but none of the amendments affect the required elements.

CR, 2011 WL 1632041, at *3 (Tex. App.—Dallas May 2, 2011, pet. ref'd) (not designated for publication).

We conclude there was sufficient evidence for the jury to determine that Hodges committed the offense charged. We overrule Hodges's first issue.

B. Ineffective Assistance of Counsel. Hodges asserts that his trial counsel was ineffective for failing to request a mutual combat jury instruction.

To prevail on an ineffective assistance of counsel claim, the familiar *Strickland v. Washington* test must be met. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)); *Andrews v. State*, 159 S.W.3d 98, 101-02 (Tex. Crim. App. 2005) (same). Under *Strickland*, the appellant must prove by a preponderance of the evidence that (1) counsel's performance was deficient, and (2) the defense was prejudiced by counsel's deficient performance. *Wiggins*, 539 U.S. at 521, 123 S.Ct. at 2535; *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Andrews*, 159 S.W.3d at 101. Absent both showings, an appellate court cannot conclude that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

In order to demonstrate deficient performance based on a failure to request a jury instruction, "an appellant must show he was entitled to the instruction." *Davis v. State*, 533 S.W.3d 498, 513 (Tex. App.—Corpus Christi 2017, pet. ref'd).

> When an appellant has nothing to lose by requesting a defensive instruction and it would have been error for the trial court to refuse the instruction, we may find deficient performance even without counsel's explanation for failing to request the instruction. [Washington v. State, 417 S.W.3d 713, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd)] (citing *Vasquez v. State*, 830 S.W.2d 948, 951 (Tex. Crim. App. 1992) (defense of necessity); *Ex parte Zepeda*, 819 S.W.2d 874, 877 (Tex. Crim. App. 1991) (accomplice witness)).

*Id*.

A victim's effective consent or an actor's reasonable belief that the victim consented to the actor's conduct "is a defense to assault if the conduct did not threaten or inflict serious bodily injury." *Id*.; *see* TEX. PENAL CODE ANN. § 22.06(a)(1). To be entitled to a consent or "mutual combat" instruction, the defendant must first admit that he engaged in conduct that constituted "combat." *See Shaw v. State*, 243 S.W.3d 647, 659 (Tex. Crim. App. 2007) (justification defense appropriate when defendant admits to every element of offense but interposes justification to excuse criminal conduct); *see also Jordan v. State*, 593 S.W.3d 340, 343 (Tex. Crim. App. 2020) (defendant cannot invoke confession-and-avoidance defense and deny he committed charged conduct); *Harrison v. State*, 421 S.W.3d 39, 41-42 (Tex. App.—Waco 2013, pet. ref'd) (defendant must admit every element of offense including culpable mental state to be entitled to necessity defense). Hodges denied choking or striking Girlfriend in any manner. "A flat denial of the conduct in question will foreclose an instruction on a justification defense." *Ebikam v. State*, No. PD-1199-18, 2020 WL 3067581, at * 3 (Tex. Crim. App. June 10, 2020) (not designated for publication).

Additionally, there is nothing in the record to reflect that Girlfriend, by her words or actions, expressly or impliedly consented to Hodges choking or assaulting her or that Hodges held a reasonable belief that Girlfriend consented to the same. A defendant who claims mutual combat must show some evidence of an "antecedent agreement to fight." *Davis*, 533 S.W.3d at 514. Hodges points to the number of domestic violence incidents between the parties as evidence of such an agreement. However, even assuming a victim consents to fight with a defendant, an instruction on mutual combat is not available if the defendant's conduct results in serious bodily injury. *See Romero v. State*, No. 05-18-01318-CR, 2020 WL 400182, at *4 (Tex. App.—Dallas Jan. 23, 2020, pet. ref'd).

When serious bodily injury is either threatened or incurred, it effectively vitiates any consent. *See Miller v. State*, 312 S.W.3d 209, 214 n.2 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). "Serious bodily injury" means "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PENAL CODE ANN. § 1.07(a)(46). Choking or strangling an individual threatens serious bodily injury. *See Walter v. State*, 581 S.W.3d 957, 972 (Tex. App.—Eastland 2019, pet. ref'd); *see also In re J.A.P.*, No. 03-02-00112-CV, 2002 WL 31317256, at *4 (Tex. App.—Austin Oct. 17, 2002, no pet.) (not designated for publication) (choking victim threatened serious bodily injury and negated defense of consent).

On the record before us, we cannot say the trial court would have abused its discretion in refusing a "mutual combat" instruction. *See Davis*, 533 S.W.3d at 514. Therefore, Hodges's counsel was not ineffective for failing to request such an instruction. We overrule Hodges's second issue.

### *Conclusion*

Having overruled both of Hodges's issues, we affirm the judgment of the trial court.

REX D. DAVIS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Neill
Affirmed
Opinion delivered and filed September 9, 2020
Do not publish
[CR25]

