APPELLANT ATTORNEY: M. Patrick Maguire, M. Patrick Maguire, P.C., 945 Barnett Street, Kerrville, TX 78028.
APPELLEE ATTORNEY: Tonya Spaeth Ahlschwede, 452nd District Attorney, 111 Austin Street, P.O. Box 635, Mason, TX 76856.
Sitting: Rebeca C. Martinez, Justice, Patricia O. Alvarez, Justice, Luz Elena D. Chapa, Justice
Opinion by: Patricia O. Alvarez, Justice *609 Appellant Kevin Michael McGruder was charged by indictment with unauthorized use of a motor vehicle, aggravated assault against a peace officer, and evading arrest or detention with a vehicle, all alleged to have occurred on April 3, 2016. McGruder waived his right to a jury trial and proceeded to a contested hearing before the trial court. After finding McGruder guilty on all three counts, the trial court assessed punishment as follows: (1) in cause number 04-17-00588-CR, the unauthorized use of a motor vehicle charge, the trial court assessed two years' confinement in the State Jail Division of the Texas Department of Criminal Justice; (2) in cause number 04-17-00589-CR, aggravated assault on a peace officer, the trial court assessed fort-years' confinement in the Institutional Division of the Texas Department of Criminal Justice; and, (3) in cause number 04-17-00590-CR, the evading arrest or detention with a vehicle, the trial court assessed ten years' confinement in the Institutional Division of the Texas Department of Criminal Justice.
In his sole issue on appeal, McGruder contends the evidence was insufficient to establish he used a deadly weapon in the commission of the aggravated assault on a peace officer, in cause number 04-17-00589-CR.[1] We affirm the trial court's judgments.
FACTUAL AND PROCEDURAL BACKGROUND
On April 3, 2016, Texas Department of Public Safety Trooper Zachariah Lundy was on patrol when he saw a black Toyota Tundra pickup truck traveling west on Interstate Highway 10 in Kimble County, Texas. The officer identified the Toyota Tundra as stolen from Bexar County and requested assistance to initiate a stop of the Toyota Tundra. After being joined by Junction Chief of Police Rudy Supak and Kimble County Sheriff's Office Deputies Jack Noah and Steve Brown, Deputy Lundy activated his overhead lights to signal the driver of the Toyota Tundra to pull over to the side of the road. In response, however, the truck's driver accelerated to approximately ninety to ninety-five miles-per-hour. The officers followed in pursuit.
Deputy Lundy testified that approximately six miles into the pursuit, the truck's driver began throwing objects out of the driver's-side window, including a "trailer hitch cover or trailer hitch shaped like a longhorn made out of thick metal," a screwdriver, some bolts, and some papers. The deputy clarified that the trailer hitch, or receiving hitch, was the first item thrown from the truck.
The officers continued pursuing the driver for several miles. The Toyota Tundra struck several vehicles on the roadway, ultimately resulting in a disabled front, passenger-side tire. The truck crossed the center median, traveled across the eastbound lanes of traffic, down a private road, through a fence, eventually stopping at a riverbed on the other side of the fence. The driver exited the vehicle on foot. Approximately two hours later, the officers located the driver of the vehicle, McGruder, who was subsequently charged *610 with unauthorized use of a deadly weapon, aggravated assault on a peace officer, and evading arrest or detention with a motor vehicle.
McGruder contends the State's evidence was insufficient to establish his use of a deadly weapon in the commission of the aggravated assault on a peace officer.
SUFFICIENCY OF THE EVIDENCE
A. Standard of Review
In reviewing the sufficiency of the evidence, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Adames v. State , 353 S.W.3d 854, 860 (Tex. Crim. App. 2011) ; accord Gear v. State , 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). "This standard recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence...." Adames , 353 S.W.3d at 860 ; accord Gear , 340 S.W.3d at 746. The reviewing court must also give deference to the jury's ability "to draw reasonable inferences from basic facts to ultimate facts." Hooper v. State , 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting Jackson v. Virginia , 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ). "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." Id. (citing Johnson v. State , 871 S.W.2d 183, 186 (Tex. Crim. App. 1993) (en banc) ).
We may not substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. King v. State , 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). We defer to the factfinder's responsibility to resolve any conflicts in the evidence fairly, weigh the evidence, and draw reasonable inferences. See Hooper , 214 S.W.3d at 13 ; King , 29 S.W.3d at 562. The factfinder alone decides whether to believe eyewitness testimony, and it resolves any conflicts in the evidence. See Hooper , 214 S.W.3d at 15 ; Young v. State , 358 S.W.3d 790, 801 (Tex. App.-Houston [14th Dist.] 2012, pet. ref'd). In conducting a sufficiency review, "[w]e do not engage in a second evaluation of the weight and credibility of the evidence, but only ensure that the jury reached a rational decision." Young , 358 S.W.3d at 801.
B. Arguments of the Parties
McGruder contends the evidence is insufficient to support the trial court's finding that the receiver hitch was a deadly weapon, or that it was used in a manner that its use, or intended use, was capable of causing death or serious bodily injury.
The State counters that the evidence supports the receiver hitch was capable of causing death or serious bodily injury, and the evidence was sufficient to support the trial court's affirmative finding.
C. Necessary Proof
A person commits aggravated assault if he intentionally or knowingly threatens another with imminent bodily injury and the person "uses or exhibits a deadly weapon during the commission of the assault." TEX. PENAL CODE ANN . §§ 22.01(a)(2), 22.02(a)(2) (West 2011). The offense is a second-degree felony if it is committed "against a person the actor knows is a public servant while the public servant is lawfully discharging an official duty." Id. § 22.02(b)(2)(B).
A "deadly weapon" is defined as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Id. § 1.07(a)(17)(B) (West Supp. 2018). " 'Serious bodily injury' means bodily injury that creates a substantial *611 risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Id. § 1.07(a)(46); see also Tucker v. State , 274 S.W.3d 688, 690-91 (Tex. Crim. App. 2008). The use of the word "capable" means the statute covers "conduct that threatens deadly force," and thus the State is not required to show that the "use or intended use causes death or serious bodily injury" but that the "use or intended use is capable of causing death or serious bodily injury." McCain v. State , 22 S.W.3d 497, 503 (Tex. Crim. App. 2000) ; accord Tucker , 274 S.W.3d at 690-91. Actual injury is not a "prerequisite to a deadly weapon finding," Romero v. State , 331 S.W.3d 82, 84 (Tex. App.-Houston [14th Dist.] 2010, pet. ref'd) (citing Dominique v. State , 598 S.W.2d 285, 286 (Tex. Crim. App. 1980) ), and "[e]ither expert testimony or lay testimony may be independently sufficient to support a deadly weapon finding," ids="9933697" index="24" url="https://cite.case.law/sw2d/598/285/#p286">id. (citing Banargent v. State , 228 S.W.3d 393, 399 (Tex. App.-Houston [14 Dist.] 2007, pet. ref'd) ).
D. Testimony Specifically Related to the Receiving Hitch
During his testimony, Deputy Lundy identified two photographs of the trailer hitch, which he described as "heavy" and "well-constructed."
[I]t went up-up in the air and came down towards me, towards the roadway. I was directly behind the [Toyota Tundra] when [the driver] threw it out. It went to my right and landed just in the middle of the roadway, between the inside and outside of the Interstate.
Deputy Lundy confirmed that the vehicles were traveling approximately ninety miles-per-hour when the hitch was thrown, his vehicle was approximately 100 feet from the Toyota Tundra when the hitch was thrown, and the hitch bounced several times when it hit the pavement. The deputy testified that, based on his training and experience, the trailer hitch was capable of causing death or serious bodily injury. The deputy also authenticated a video recording taken from the dash cam of his patrol vehicle.
Deputy Steve Brown was traveling immediately behind Deputy Lundy when the Toyota Tundra driver began throwing items from the driver's-side window.
The papers came out, things started coming out of the vehicle, and then all of a sudden this receiver hitch come out the driver's-side window and bounced on the asphalt and come up, and I had to swerve to the right to-and it was really scary at that time. I thought that thing may come through the window, and I projected it to come through the window or hit the side of the patrol unit. It was a very dangerous act in my opinion.... It could have went through the windshield and killed me.
Deputy Brown further opined the hitch created a threat of imminent bodily injury and that in his training and experience, the receiver hitch was capable of causing death or serious bodily injury. Deputy Brown clarified that not only did he "consider it a deadly weapon. I consider it as dangerous as a shotgun."
Chief Supak testified that after seeing the object thrown from the Toyota Tundra, he was concerned about the hitch coming through the window and killing him, or causing him to wreck his vehicle. Chief Supak also authenticated the video recording of the pursuit, taken from his patrol vehicle's dash cam.
Deputy Jack Noah testified he saw the metal object fly out of the Toyota Tundra and stopped to pick it up.
My [thought] was it was dangerous. It was-it could have caused harm. It was *612 a large metal object bouncing, ... it was made out of three-eighths steel. The longhorn part was cut out of three-eighths steel. It was probably about a foot long, six inches wide and had a two-and-a-half-inch square tubing bolted on to it. It probably weighed around 10 pounds.
Deputy Noah testified the trailer hitch was dangerous for all officers involved; in his training and experience, the object was capable of causing serious bodily injury or death and was a deadly weapon. He further testified the manner in which the trailer hitch was used, or intended to be used, was also capable of causing death or serious bodily injury.
E. Analysis
The State relied on the testimony of several officers, photographs of the receiver hitch, and video recordings taking from the dash cam recorders of Deputy Lundy's and Chief Supak's patrol vehicles. The trial court observed the size, shape, and weight of the hitch. The trial court also observed the hitch thrown, how far it was from the officers' vehicles, and the impact the hitch had on the asphalt as it hit the ground. Several of the officers testified the hitch was capable of causing death or serious bodily injury and the danger it caused on the highway when McGruder threw it. Deputy Brown further testified to the fear the hitch personally caused him.
We note our sister courts have concluded that objects thrown at another individual may qualify as a deadly weapon. See, e.g. , Mosley v. State , No. 12-16-00115-CR, 2017 WL 2351356, at *2 (Tex. App.-Tyler May 31, 2017, no pet.) (mem. op., not designated for publication) (concluding rock thrown through car windshield was deadly weapon); Deblanc v. State , 2004 WL 307324, at *2-3 (Tex. App.-Beaumont Feb. 18, 2004, no pet.) (concluding evidence sufficient for finding metal pipe was deadly weapon based on officer testimony and jury's examination of photograph of object); Marin v. State , No. 08-00-344-CR, 2002 WL 1874815, at *3 (Tex. App.-El Paso Aug. 15, 2002, no pet.) (mem. op.) (not designated for publication) (concluding a round, heavy, "water meter cover" and glass bottle, when thrown at victim, were deadly weapons capable of causing serious bodily injury); Williams v. State , No. 14-00-00667-CR, 2001 WL 726318, at *2-3 (Tex. App.-Houston [14th Dist.] June 28, 2001, no pet.) (not designated for publication) (concluding brick thrown through car window was deadly weapon based on deputy's testimony that it was capable of causing death or serious bodily injury).
Based on a review of the record, and viewing the evidence in the light most favorable to the trial court's verdict, we conclude the trial court could have reasonably determined the receiving hitch was (1) capable of causing death or serious bodily injury and (2) that McGruder used the hitch in a manner that's use, or intended use, was capable of causing death or serious bodily injury. See McCain , 22 S.W.3d at 503 ; see also TEX. PENAL CODE ANN . § 1.07(a)(17)(B), (46). The trial court was, therefore, rationally justified in finding beyond a reasonable doubt the hitch was a deadly weapon. See McCain , 22 S.W.3d at 503 ; TEX. PENAL CODE ANN . §§ 1.07(a)(17)(B), 22.01(a)(1), (2).
CONCLUSION
Having overruled McGruder's sole issue on appeal-the deadly weapon finding in cause number 04-17-00589-CR-we affirm the judgments in cause numbers 04-17-00588-CR, 04-17-00589-CR, and 04-17-00590-CR.

McGruder does not challenge the judgments of the convictions in cause numbers 04-17-00588-CR and 04-17-00590-CR.