

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-18-00205-CR

_____

BRYAN WHITE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 102nd District Court
Bowie County, Texas
Trial Court No. 18-F-0349-102

Before Morriss, C.J., Burgess and Stevens, JJ.
Memorandum Opinion by Justice Stevens

## MEMORANDUM OPINION

Bryan White, an inmate at the Texas Department of Criminal Justice's Barry Telford Unit (the Unit), punched a correctional officer in the side of his head and knocked him unconscious. A Bowie County jury found that White's fists were deadly weapons and convicted him of aggravated assault against a security officer while in the performance of his duties. *See* TEX. PENAL CODE ANN. § 22.02(b)(2)(D). After White pled true to the State's enhancement allegation, he was sentenced to forty-five years' imprisonment and ordered to pay $274.00 in court costs.

On appeal, White argues (1) that the trial court erred in allowing a nurse and investigating officer to provide expert testimony that White used his fist in a manner capable of causing serious bodily injury, (2) that the trial court erred in concluding that the investigating officer was capable of providing lay testimony on the issue, and (3) that the bill of costs does not support all the costs assessed in the trial court's judgment.

We reject White's first point of error because the nurse and investigating officer were lay witnesses. We also conclude that White failed to preserve his second point of error. We sustain White's third point of error and modify the trial court's judgment to reflect that $264.00 is the correct amount of court costs. We also modify the judgment to show the proper description and statute of offense. We affirm the judgment, as modified.

## I.      Factual and Procedural History

### A.      The Requirements of a Deadly-Weapon Finding

The Texas Penal Code defines a "deadly weapon" to include "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE

2

ANN. § 1.07(a)(17)(B) (Supp.); *see Tucker v. State*, 274 S.W.3d 688, 691 (Tex. Crim. App. 2008). "Bodily injury means physical pain, illness or any impairment of physical condition." *Brooks v. State*, 900 S.W.2d 468, 472 (Tex. App.—Texarkana 1995, no pet.); *see* TEX. PENAL CODE ANN. § 1.07(a)(8) (Supp.). "Serious bodily injury is bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ." *Brooks*, 900 S.W.2d at 472 (citing TEX. PENAL CODE ANN. § 1.07(a)(34)). "Although a fist or hand is not a deadly weapon per se, it can become a deadly weapon if in the manner of use it is capable of causing death or serious bodily injury." *Id.*; *see Davis v. State*, 533 S.W.3d 498, 508 (Tex. App.—Corpus Christi 2017, pet. ref'd) (citing *Lane v. State*, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004); *Turner v. State*, 664 S.W.2d 86, 90 (Tex. Crim. App. [Panel Op.] 1983)).

"The State need not show that an object actually caused serious bodily injury." *Davis*, 533 S.W.3d at 508 (citing *McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000)). "But the injuries, if any, inflicted on a complainant are factors to be considered in determining whether a hand was used as a deadly weapon." *Id.* (citing *Lane*, 151 S.W.3d at 191). In concluding that a defendant's closed fist was a deadly weapon, the Texas Court of Criminal Appeals has considered the victim's loss of consciousness, concussion to the brain, bruising, and continued symptoms of nausea, vomiting, dizziness, and pain. *Lane v. State*, 151 S.W.3d 188, 192 (Tex. Crim. App. 2004); *see Davis*, 533 S.W.3d at 508; *Brooks*, 900 S.W.2d at 472–73.

It is well-established that "lay witness testimony alone" is sufficient to support a deadly-weapon finding. *Barnett v. State*, 344 S.W.3d 6, 19 (Tex. App.—Texarkana 2011, pet. ref'd); *see*

3

*Tucker v. State*, 274 S.W.3d 688, 691–92 (Tex. Crim. App. 2008); *McGruder v. State*, 559 S.W.3d 608, 611 (Tex. App.—San Antonio 2018, no pet.); *Wilson v. State*, 391 S.W.3d 131, 137 (Tex. App.—Texarkana 2012, no pet.).

### B.      The Evidence at Trial

White does not argue that the evidence at trial was insufficient to prove that his hands were a deadly weapon.  Instead, he argues that the trial court erred in allowing a nurse and an investigating officer to provide expert testimony on the matter.  Before the trial court ruled on White's objections, it had heard ample lay testimony on the issue.

Garth Parker, the warden of the Unit, testified that Kevin Squibb was supervising inmates as a correctional officer when he was assaulted by White.  According to LaToya Williams, another correctional officer, Squibb radioed for help just before the incident to report that he had been threatened.  Williams and Captain Tony Rust responded to the call and found Squibb lying on the floor, unconscious, with blood under his head.

Rust testified that he restrained White after he admitted to hitting Squibb in the face.  The surveillance footage showing White punching Squibb was admitted without objection and published to the jury.  The recording showed that Squibb went limp when punched, hit the ground, remained motionless for thirty seconds, awoke, and tried to move, but again fell unconscious.

According to Sergeant Jyreane Jones, Squibb was conscious when she arrived on the scene, but was disoriented and incoherent.  Jones testified that Squibb had a "[p]retty severe . . . head injury."  Squibb was stabilized with a neck brace and transported to the hospital.  Rust testified that a punch to the head could cause serious injury and described Squibb's injuries as "severe

4

trauma[].” Jewel Shaw, a sergeant at the Unit, testified that he had seen people seriously injured as a result of someone's use of their hands. All of the above evidence was admitted without objection.

Next, the State called Shagayla Palmer, a licensed vocational nurse employed with the Unit's University of Texas Medical Branch. Palmer testified that she treated Squibb at the Unit after the assault and that he required transportation to a hospital as a result of his "severe" trauma. Palmer also testified, without objection, that loss of consciousness is characterized as serious bodily injury, that a head injury is severe because it creates a substantial risk of permanent impairment or death, and that the type of injuries Squibb sustained could be caused with bare hands.[1] Yet, the following discussion ensued when the State asked Palmer if White's hands were used in a manner capable of causing serious bodily injury:

> [BY THE DEFENSE]: Your Honor, objection. That's the absolute question.
>
> [BY THE STATE]: Can we approach the bench, please?
>
> THE COURT: You may.
>
> (AT THE BENCH, ON THE RECORD)
>
> [BY THE STATE]: Judge, the case law is pretty clear. I've got three or four cases printed off, that the medical personnel, in fact, the lead detective and other folks, if they observed it, and they have knowledge of it, can testify whether or not they believe it was used in that manner.

---

[1]Although White successfully objected to Palmer's testimony that she categorized loss of consciousness as serious bodily injury, White did not ask the trial court to strike the testimony. As a result, the testimony was before the jury for all purposes.

5

[BY THE DEFENSE]: That's an opinion. I don't think she's been established to be able to give an opinion at this point. . . . 701, 702, she can't give that opinion. If you want to qualify her, you can try.

[BY THE STATE]: Well, as to whether or not something is used as a deadly weapon can be offered through a lay witness and an expert, and I have these cases printed out if you want them.

THE COURT: No. And I think, just as the objection you made earlier, break your question down, and you probably get there, but maybe the way it's worded right now. Maybe break it up into some pieces. The objection is sustained.

. . . .

Q. [BY THE STATE]: Okay. So whatever was used to inflict the injuries on Officer Squibb, was it used, in your opinion, in a manner capable of causing serious bodily injury?

A. [BY PALMER] Yes.

[BY THE DEFENSE]: Note my objection, Your Honor. . . . I have to give a timely, specific objection. My objection is to the lack of foundation, 701 through 705, 403.

THE COURT: It's overruled.

After Palmer, Squibb testified that he did not recall the impact of White's fist and that the next thing he remembered was being at home. Squibb said that he was treated for a concussion and fractured ribs and that he still suffered from memory loss and dizziness. Squibb also testified that he had a headache daily, which medication prescribed by specialists did not fully treat.

Michael Horn, a criminal investigator with the Office of the Inspector General, testified that he took photos of White's injuries right after the assault. Those photos, admitted into evidence without objection, focused on White's head injuries and showed blood coming from his ears. According to Horn, the surveillance footage of the assault showed Squibb was unconscious before

6

he hit the ground because "his hands [were] by his side, and he [made] no effort to break his fall." Horn testified that White was twenty-six years old, 5'11", muscular, and weighed between 230 and 250 pounds and that Squibb was fifty-two years old, slender, and weighed around 150 pounds. Horn testified that he had witnessed people suffer serious injury from being punched in the head. Over an objection that the State failed to lay the proper foundation for Horn's opinion, Horn testified that, given the comparison of White's and Squibb's physical attributes, White's punch was capable of causing serious bodily injury. Horn also added that he had witnessed "an offender kill another offender with a punch."

## II.     The Trial Court Did Not Admit Expert Testimony

On appeal, White argues that, because Palmer was a nurse, "the trial court presumably concluded that she qualified as an expert and accepted her as an expert witness on medical issues." While White does not challenge Palmer's qualification as an expert, he complains that Palmer did not explain the basis for her opinion about White's use of his hands as a deadly weapon. White also argues that Horn was not qualified to testify as an expert.

We reject White's suggestion that the trial court impliedly found that Palmer and Horn were experts. During Jones' testimony, the trial court recognized that lay witnesses could offer opinion testimony on whether Squibb's injuries were serious. The State never designated or introduced Palmer and Horn as expert witnesses. Palmer treated Squibb after the assault and Horn personally witnessed and documented his injuries. In response to White's first objection to Palmer's testimony, the State argued that Palmer and Horn could testify on whether White's fists constituted deadly weapons because they "observed it, and they [had] knowledge of it."

7

Because we find that Palmer and Horn were lay witnesses, we reject White's arguments that the trial court erred in admitting their testimony as expert testimony.

### III. White's Objection to Horn's Lay Testimony Is Unpreserved

Next, White also argues that the trial court erred in admitting Horn's lay witness testimony because (1) he did not personally witness the assault and (2) his opinion was not rationally based on perception since he relied on a "grainy distant video." We find that these arguments are raised for the first time on appeal.

To preserve a complaint for our review, a party must first present to the trial court a timely request, objection, or motion stating the specific grounds for the desired ruling if not apparent from the context. TEX. R. APP. P. 33.1(a)(1). Horn testified without objection about Squibb's injuries, the conclusions drawn from his observation of the security recording, and the fact that he had witnessed people suffer serious bodily injury from a punch. The only objection to Horn's opinion that White's punch could cause serious bodily injury was a lack of foundation, with no specification of the type of foundation that was required. Given White's lack of specificity, and previous objections challenging Palmer as an expert, the trial court likely understood White's objection to mean the State had not laid the proper foundation to show Horn was an expert.

In any case, White's general lack of foundation objection was insufficient to preserve error. *See Bird v. State*, 692 S.W.2d 65, 70 (Tex. Crim. App. 1985) (An objection that the proper predicate has not been laid is "too general to preserve error. Counsel must inform the court just how the predicate is deficient." (Citations omitted)); *Morris v. Morris*, No. 12-17-00120-CV, 2018 WL 851361, at *3 (Tex. App.—Tyler Feb. 14, 2018, no pet.) (mem. op.) (a "general objection to

8

a lack of foundation was not specific enough to preserve a complaint that the affidavit is not based on [the witness's] personal knowledge"); *see also Delane v. State*, 369 S.W.3d 412, 429 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (citing *Elmore v. State*, No. 07-04-0587-CR, 2005 WL 2347401, at *2 (Tex. App.—Amarillo Sept. 26, 2005, pet. ref'd) (mem. op., not designated for publication) ("objection to 'no reliable foundation' was too general to advise trial court of any specific deficiency in testimony and did not preserve error")).[2] We, therefore, overrule White's second point of error.[3]

## IV.    We Modify the Trial Court's Judgment

"An appellant in a criminal case may challenge on direct appeal the sufficiency of the evidence supporting an assessment of court costs." *Webb v. State*, 557 S.W.3d 690, 698 (Tex. App.—Texarkana 2018, pet. ref'd) (citing *Armstrong v. State*, 340 S.W.3d 759, 765–66 (Tex. Crim. App. 2011)). "To measure the sufficiency of the evidence supporting an assessment of court costs, we review the record in the light most favorable to the assessment." *Id.*

The appellate record contains a certified, itemized felony statement of cost meeting the requirements of Section 103.001 of the Texas Code of Criminal Procedure, which totals $274.00. *See* TEX. CODE CRIM. PROC. ANN. art. 103.001. The felony statement of cost shows that White was charged two $5.00 fees for the services of a peace officer, including one fee for his arrest and notice to appear and another for his release. *See* TEX. CODE CRIM. PROC. ANN. art. 102.011. White

---

[2]Although these two unpublished criminal cases have no precedential value, we may take guidance from them "as an aid in developing reasoning that may be employed." *Carrillo v. State*, 98 S.W.3d 789, 794 (Tex. App.—Amarillo 2003, pet. ref'd).

[3]White is also unable to show harm in the admission of the objected-to testimony because of the evidence before the jury that was admitted without objection.

argues that the record does not support those fees because there is no evidence that he was arrested or released. The facts here, and the trial court's docket sheet, show that White was already an inmate at the Unit and was never released.

The State properly notes that we may modify the trial court's judgment to reduce the amount of court costs. "This Court has the power to correct and modify the judgment of the trial court for accuracy when the necessary data and information are part of the record." *Anthony v. State*, 531 S.W.3d 739, 743 (Tex. App.—Texarkana 2016, no pet.) (citing TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993)). As a result, we modify the trial court's judgment by subtracting $10.00 from the amount of court costs assessed.

We also modify the trial court's judgment to reflect the correct name and statute of offense. While the trial court's judgment accurately states that White was convicted of aggravated assault, it lists the regular assault statute as the statute of offense and states that the assault was "on public servant with prior felony conviction." *See* TEX. PENAL CODE ANN. § 22.01. This information is inaccurate since White was convicted of aggravated assault against a security officer under Section 22.02(b)(2)(D) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 22.02(b)(2)(D).

## V.     Conclusion

We modify the trial court's judgment to reflect that (1) the correct amount of court costs is $264.00, (2) White was convicted of aggravated assault against a security officer, and (3) the

10

proper statute of offense is Section 22.02(b)(2)(D) of the Texas Penal Code.  As modified, we affirm the trial court's judgment.

Scott E. Stevens
Justice

Date Submitted:     May 23, 2019
Date Decided:     May 31, 2019

Do Not Publish