# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-20-00182-CR

**Corey Davis-Grant, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 299TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-DC-19-301545, THE HONORABLE KAREN SAGE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Corey Davis-Grant was convicted of the offense of aggravated robbery. *See* Tex. Penal Code § 29.03. The indictment contained an enhancement paragraph alleging that Davis-Grant had a prior felony conviction to which he pleaded true. The trial court sentenced Davis-Grant to twenty-five years' imprisonment. *See id.* § 12.42. On appeal, Davis-Grant challenges the sufficiency of the evidence supporting his conviction and asserts that there was error in the jury charge. We will affirm the trial court's judgment of conviction.

## BACKGROUND

On an August 2019 afternoon, Samantha McGaughy was walking from her work in downtown Austin to meet her roommate. On the way, McGaughy felt someone punch her in the back of the head behind her ears. The hit caused her to fall forward. After being hit, McGaughy felt someone come up behind her, wrap his arm around her neck, and strangle her.

The assailant demanded McGaughy's wallet and cell phone and threatened to kill her if she did not comply. After the man grabbed her wallet, he ran toward a car, and she was able to see that her assailant was wearing a red bandana. McGaughy followed him, wrote down his vehicle's license plate number, and called 911.

An Austin police officer responded to the 911 call. McGaughy provided the officer with the car's license plate number and described the assailant as wearing a red bandana. The officer learned that the car was registered to an individual living in Lockhart, Texas, and sent the information regarding the car to several law-enforcement agencies, including the Lockhart Police Department. Other officers responded to the scene, took photographs of McGaughy's injuries, and collected DNA samples from her.

Shortly after receiving information about the vehicle in question, a Lockhart police officer saw the vehicle driving to a restaurant in Lockhart. The officer watched a man and a woman exit the car and head inside. Once backup arrived, the officer went inside the restaurant to talk with the two individuals and asked them to step outside the restaurant. The woman stated that she was the vehicle's owner, and the man identified himself as Davis-Grant. The officer walked around the car and noticed a red bandana behind the passenger seat. The officer observed that Davis-Grant had indentations on his face consistent with his recently having worn a bandana and took photographs of those markings. During this exchange, Davis-Grant told the backup officer that he drove to Austin to pick up the vehicle's owner from her work in downtown Austin. Davis-Grant also admitted that he wears bandanas and currently had a GPS device on him that records his location.

The Austin Police Department impounded the car and obtained a search warrant. A search of the vehicle revealed a red bandana. In addition, the Austin officers asked businesses

2

near where the offense occurred to provide any surveillance of the incident. One camera in downtown Austin near the location of the offense captured a car like the one at issue driving in the area around the time of the offense. Ultimately, the police arrested Davis-Grant, and the indictment alleged that he committed the offense of aggravated robbery while using or exhibiting "a deadly weapon, to wit: an arm." Following Davis-Grant's arrest, the police obtained a DNA sample from him.

During the trial, McGaughy and police officers involved in the investigation testified, and photos of McGaughy's injuries as well as surveillance footage were admitted into evidence. In addition, a forensic scientist testified that testing performed on the sample from McGaughy's neck revealed a mixture of DNA from three people, that Davis-Grant could not be excluded as a contributor, that it "was 130,000 times more probable if [the sample] came from . . . McGaughy and . . . Davis-Grant and an unknown person than if it was just her and two unknown people," and that the testing results were "very strong support" for the proposition that Davis-Grant was a contributor. Further, an employee for a company that monitors GPS devices stated that the records for Davis-Grant's device showed that he drove to Austin on the day in question, that he was in the downtown Austin area at the time of the offense, and that he drove from Austin back to Lockhart shortly thereafter. During the employee's testimony, exhibits containing GPS information and maps of various locations were admitted into evidence.

After considering the evidence, the jury found Davis-Grant guilty of aggravated robbery. Davis-Grant appeals his conviction.

3

**DISCUSSION**

In his first issue on appeal, Davis-Grant challenges the sufficiency of the evidence supporting the jury's determination that he used or exhibited a deadly weapon during the offense. In his second issue, Davis-Grant argues that the jury charge included an erroneous deadly-weapon instruction.

**Sufficiency of the Evidence**

When arguing that the evidence was insufficient to support the jury's determination that he used or exhibited his arm as a deadly weapon during the offense, Davis-Grant asserts that his arm could only have been a deadly weapon "if its actual use or intended use *during the offense at issue* was capable of causing death or serious bodily injury." Further, Davis-Grant contends that the evidence does not demonstrate that his arm was used or intended to be used in that manner; on the contrary, he urges that the evidence established that "the sole purpose of the assault was to obtain [McGaughy]'s wallet or phone, not to render serious injury." As support for this proposition, Davis-Grant argues that the photographs of McGaughy's injuries sustained during the offense showed that she only had "a tiny scratch" on her neck with no discernible "redness," "bruising, [or] swelling"; highlights that there was no evidence establishing that she sought any medical treatment for any injury; and notes that no medical personnel testified that her airway had been restricted or that the amount of constriction at issue had the potential to end her life or cause serious bodily injury. Along those same lines, Davis-Grant argues that the only evidence regarding any potential danger due to the strangulation came from officers describing hypothetical situations in which they described an arm being used as a deadly weapon by restricting someone's airway "to the point that it causes death or serious

4

permanent disfigurement, neither of which . . . applied in this case." Additionally, Davis-Grant postulates that McGaughy could not have been seriously injured because she was able to run to the car and write down the license plate number before calling the police. Further, Davis-Grant characterizes McGaughy's testimony as only establishing that "her assailant grabbed her from behind, briefly squeezed her neck with his arm while attempting to obtain her wallet or phone, and then promptly released her and ran away." Moreover, Davis-Grant contends that even though McGaughy testified that the assailant threatened to kill her, that testimony alone could not establish that a deadly weapon was used or exhibited. For these reasons, Davis-Grant urges that the evidence at trial was insufficient to establish that he used or exhibited a deadly weapon.

"Evidence is sufficient to support a criminal conviction if a rational jury could find each essential element of the offense beyond a reasonable doubt." *Stahmann v. State*, 602 S.W.3d 573, 577 (Tex. Crim. App. 2020) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In making this determination, "[w]e view the evidence in the light most favorable to the verdict and consider all of the admitted evidence, regardless of whether it was properly admitted." *Id*. "The jury is the sole judge of credibility and weight to be attached to the testimony of the witnesses." *Id*. "Juries can draw reasonable inferences from the evidence so long as each inference is supported by the evidence produced at trial," *id*., and are "free to apply common sense, knowledge, and experience gained in the ordinary affairs of life in drawing reasonable inferences from the evidence," *Eustis v. State*, 191 S.W.3d 879, 884 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). "When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict and defer to that determination." *Merritt v. State*, 368 S.W.3d 516, 525-26 (Tex. Crim. App. 2012).

5

Appellate courts must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). Appellate courts also must bear in mind that "direct and circumstantial evidence are treated equally" and that "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor" and "can be sufficient" on its own "to establish guilt." *Kiffe v. State*, 361 S.W.3d 104, 108 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd). Furthermore, reviewing courts "measure the sufficiency of the evidence by the so-called hypothetically correct jury charge, one which accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant is tried." *See DeLay v. State*, 465 S.W.3d 232, 244 n.48 (Tex. Crim. App. 2014). The evidence is legally insufficient if "the record contains no evidence, or merely a 'modicum' of evidence, probative of an element of the offense" or if "the evidence conclusively establishes a reasonable doubt." *Kiffe*, 361 S.W.3d at 107 (quoting *Jackson*, 443 U.S. at 320).

Under the terms of the Penal Code, a person commits the offense of aggravated robbery if, while "in the course of committing theft . . . and with intent to obtain or maintain control over the property," he "intentionally, knowingly, or recklessly causes bodily injury to another" and "uses or exhibits a deadly weapon" during the commission of the offense. Tex. Penal Code §§ 29.02(a), .03(a)(2). The Penal Code contains a definition for items that are deadly weapons per se, including firearms and other items designed for the purpose of inflicting death or serious bodily injury, but also specifies that a deadly weapon can be "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17).

6

"'Serious bodily injury' means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ," and "'[b]odily injury' means physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8), (46).

When deciding whether an object can cause death or serious bodily injury, the following factors may be considered:

> (1) words of the accused; (2) the intended use of the weapon; (3) the size and shape of the weapon; (4) testimony by the victim that he feared death or serious bodily injury; (5) the severity of any wounds inflicted; (6) the manner in which the assailant allegedly used the object; (7) physical proximity of the parties; and (8) testimony as to the weapon's potential for causing death or serious bodily injury.

*Romero v. State*, 331 S.W.3d 82, 83 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). No factor is determinative, and each case must be examined on its own facts. *Nash v. State*, 175 S.W.3d 427, 430 (Tex. App.—Texarkana 2005, pet. ref'd).

Although "the injuries suffered by the victim can by themselves be a sufficient basis for inferring that a deadly weapon was used," *Tucker v. State*, 274 S.W.3d 688, 691-92 (Tex. Crim. App. 2008), the State does not have to show that the object actually caused serious bodily injury, *see McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000); *see also Booker v. State*, 712 S.W.2d 853, 856 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd) (explaining that "no injury to the victim is necessary if other evidence indicates that" object "is a deadly weapon"). Additionally, "[e]xpert testimony is not required" to prove that an object is a deadly weapon. *See Rivera v. State*, 271 S.W.3d 301, 304 (Tex. App.—San Antonio 2008, no pet.). The State is not required to prove "that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of

7

causing death or serious bodily injury." *McCain*, 22 S.W.3d at 503. "The placement of the word 'capable' in the provision allows the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force." *Id.* However, the evidence must establish more than a hypothetical possibility that the object could cause death or serious bodily injury, and the assessment must be made "in light of the facts that actually existed when the felony was committed." *Johnston v. State*, 115 S.W.3d 761, 764 (Tex. App.—Austin 2003), *aff'd*, 145 S.W.3d 215 (Tex. Crim. App. 2004).

In this case, McGaughy testified that the offender grabbed her from behind and "put [her] in a choke hold" by wrapping "his arm around [her] neck and cut[ting] off blood circulation or oxygen circulation." *See Marshall v. State*, 479 S.W.3d 840, 844 (Tex. Crim. App. 2016) (explaining "that any impediment to normal breathing is a bodily injury"); *see also Hill v. State*, 913 S.W.2d 581, 591 (Tex. Crim. App. 1996) (Baird, J., concurring and dissenting) (reasoning that object not normally considered deadly weapon may "become so if the manner of [its] use was to strangle . . . a victim"). Additionally, McGaughy related that she could not breathe, started to have a tingling sensation in her arms and legs due to her assailant having cut off her circulation, and reached the point where although not yet unconscious, she could not "really do anything." Similarly, McGaughy stated that the lack of circulation made her lose coordination, unable to "move [her] hands that well," and unable to "really feel anything in [her] hands." Moreover, McGaughy testified that after she called 911, she could not think straight and was unable to process what the 911 operator was telling her.

Regarding her injuries, McGaughy related that she sustained injuries to her neck from where the offender's arm had been, and photos admitted into evidence showed an abrasion on the front part of her neck and discoloration on the side of her neck. Further, McGaughy

8

testified that the assailant "told [her] he was going to kill [her] a couple of times" during the robbery. *See Ortiz v. State*, 993 S.W.2d 892, 894 (Tex. App.—Fort Worth 1999, no pet.) (determining that evidence was sufficient to show defendant used deadly weapon in part because it established that defendant threatened to kill victim multiple times). In addition, one of the investigating officers testified that the charge in this case was aggravated robbery because the offender restricted McGaughy's airway, and the officer explained that strangling someone or restricting the flow of oxygen or blood can result in serious bodily injury or death. Similarly, other officers involved in this case testified that an arm is capable of inflicting serious bodily injury or death if it is used to strangle or cut off someone's air flow or blood circulation. *See Quincy v. State*, 304 S.W.3d 489, 500 (Tex. App.—Amarillo 2009, no pet.) (including in sufficiency analysis officer's testimony that defendant used hands as deadly weapons).[1]

Viewing the evidence in the light most favorable to the conviction and bearing in mind the reasonable inferences that the jury was free to make from that evidence, we conclude that the evidence is legally sufficient to support the jury's determination that Davis-Grant's use or intended use of his arm constituted a deadly weapon because it could cause death or serious

---

[1] When arguing that the evidence is insufficient, Davis-Grant points to cases involving sufficiency challenges to deadly-weapon findings and argues that injuries in those cases are the types of injuries that should be present to justify a deadly-weapon determination. *See, e.g.*, *Lane v. State*, 151 S.W.3d 188, 192 (Tex. Crim. App. 2004) (noting that victim "suffered a concussion to the brain, bruising, [] temporary loss of consciousness," . . . "nausea, vomiting, dizziness, and considerable pain"); *Baltazar v. State*, 331 S.W.3d 6, 8-9 (Tex. App.—Amarillo 2010, pet. ref'd) (considering injuries including bloody nose, bruised arm, abrasions on legs and back, loss of consciousness, pain, numbness, double vision, blurriness, and facial fractures); *Brooks v. State*, 900 S.W.2d 468, 472-73 (Tex. App.—Texarkana 1995, no pet.) (noting that victim was knocked unconscious, had subarachnoid hemorrhage, abrasions and swelling of face and forehead, bruising, and traumatic brain contusion). However, none of those cases stand for the proposition that certain types of injuries must be present for a jury to conclude that a deadly weapon was used or exhibited, and as set out above, it is not necessary for the victim to have suffered any injury before a jury can conclude that an offender used or exhibited a deadly weapon. *See Booker v. State*, 712 S.W.2d 853, 856 (Tex. App.—Houston [14th Dist.] 1986, pet. ref'd).

bodily injury. *See* Tex. Penal Code § 1.07(a)(17); *see also Hopper v. State*, 483 S.W.3d 235, 239-40 (Tex. App.—Fort Worth 2016, pet. ref'd) (concluding that evidence was sufficient where it showed that defendant strangled second victim by grabbing her throat causing victim not to be able to "breathe for a few seconds" and resulting in loss of feeling in victim's arms, fading vision, bruising around neck, and petechial hemorrhaging); *Fury v. State*, No. 01-04-00634-CR, 2010 WL 547503, at *6 (Tex. App.—Houston [1st Dist.] Feb. 18, 2010, no pet.) (mem. op., not designated for publication) (concluding that evidence was sufficient where defendant strangled victim by putting arm around her neck to point where "she 'started not to breathe'" and "was gasping for air" and where defendant threatened victim by saying he could kill her).[2]

For these reasons, we overrule Davis-Grant's first issue on appeal.

**Jury Charge Error**

In his second issue on appeal, Davis-Grant argues that the application portion of the jury charge contained an error regarding the deadly-weapon instruction. The relevant portion of the jury charge reads as follows:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that . . . Davis-Grant, on or about the 8th day of August, 2019, . . . as alleged in the indictment, did then and there, while in the course of committing theft of property and with intent to obtain or maintain control of said property, intentionally, knowingly or recklessly caused bodily injury to . . . McGaughy, and the said . . . Davis-Grant did then and there use or

---

[2] As further support for his arguments that the evidence in this case was insufficient, Davis-Grant primarily relies on two opinions from our sister courts of appeals in which those courts concluded that the evidence was insufficient to establish that the defendants used or exhibited deadly weapons. *See Davis v. State*, 533 S.W.3d 498 (Tex. App.—Corpus Christi 2017, pet. ref'd); *Lockett v. State*, 874 S.W.2d 810 (Tex. App.—Dallas 1994, pet. ref'd). However, neither case addressed a situation in which the victim was strangled by an offender and described experiencing the effects associated with strangulation. *See Davis*, 533 S.W.3d at 503, 504, 509; *Lockett*, 874 S.W.2d at 816.

exhibit a deadly weapon, to-wit: an arm, you will find [him] guilty of the offense of Aggravated Robbery and so say by your verdict[.]

In this issue, Davis-Grant contends that by listing "an arm" as a deadly weapon in the application portion of the charge, the jury instructions essentially defined his arm as "a deadly weapon per se." Further, Davis-Grant urges that, to be proper, the jury charge should have included the following language after the phrase "to-wit: an arm": "that in the manner of its use or intended use was capable of causing death or serious bodily injury." Additionally, because the instructions listed his arm as a deadly weapon and did not include the additional language, he insists that the instructions relieved the State of the burden of establishing beyond a reasonable doubt that his arm qualified as a deadly weapon. Moreover, although Davis-Grant acknowledges that he did not object to the instruction at issue, he asserts that the error is reversible error because the instruction egregiously harmed him.

In addressing an issue regarding an alleged jury-charge error, appellate courts must first decide whether there is error before addressing whether the alleged error resulted in any harm. *See Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The amount of harm needed for a reversal depends on whether a complaint regarding "that error was preserved in the trial court." *Swearingen v. State*, 270 S.W.3d 804, 808 (Tex. App.—Austin 2008, pet. ref'd). If no objection was made, a reversal is warranted only if the error "resulted in 'egregious harm.'" *See Neal v. State*, 256 S.W.3d 264, 278 (Tex. Crim. App. 2008) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)).

When determining if there is error in a jury charge, "reviewing courts 'must examine the charge as a whole instead of a series of isolated and unrelated statements.'" *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012) (quoting *Dinkins v. State*,

11

894 S.W.2d 330, 339 (Tex. Crim. App. 1995)). If "a definition . . . is given in the abstract portion of the charge, the application paragraph must" set out "'all of the conditions to be met before a conviction under such theory is authorized,'" "authorize 'a conviction under conditions specified by other paragraphs of the jury charge to which the application paragraph necessarily and unambiguously refers,'" or "'contain[ ] some logically consistent combination of such paragraphs.'" *Id.* at 367 (quoting *Plata v. State*, 926 S.W.2d 300, 304 (Tex. Crim. App. 1996), *overruled on other grounds by Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997)). However, "[i]t is unnecessary to repeat every abstract definition in the application paragraph of the jury charge." *Holland v. State*, 249 S.W.3d 705, 709 (Tex. App.—Beaumont 2008, no pet.). In other words, even though "the application paragraph is that section of the charge that 'specifies the factual circumstances under which the jury should convict or acquit,' it need not set forth specifically all of the elements necessary to convict a defendant if those elements have been accurately set forth in another section of the charge." *Riley v. State*, 447 S.W.3d 918, 923 (Tex. App.—Texarkana 2014, no pet.) (quoting *Vasquez*, 389 S.W.3d at 367).

Although the application portion did not have the language suggested by Davis-Grant, the abstract section immediately before the application section properly listed the elements for the offense of aggravated robbery, including the use or exhibition of a deadly weapon, and included the statutory definitions for, among other terms, a deadly weapon and serious bodily injury. *See* Tex. Penal Code §§ 1.07(a)(17), (46), 29.03. Consistent with the terms of the Penal Code, the charge explained that the term "'[d]eadly weapon' means anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *See id.* § 1.07(a)(17). Accordingly, the abstract portion of the charge included the language suggested by Davis-Grant. Moreover, as detailed above, the beginning of the application

12

paragraph at issue referenced the abstract definitions and other provisions by including the phrase "[n]ow bearing in mind the foregoing instructions." *See Roys v. State*, 416 S.W.3d 229, 236 (Tex. App.—Amarillo 2013, pet. ref'd) (noting close proximity of relevant abstract portion to application portion and highlighting portion of application section informing jury to "bear[] in mind the foregoing instructions" when determining that there was no jury-charge error); *see also Vasquez*, 389 S.W.3d at 367 (observing that "if the application paragraph 'necessarily and unambiguously' refers to another paragraph of the jury charge, then a conviction is authorized, and the trial judge need not *sua sponte* 'cut and paste' that definition into the application paragraph").[3]

In light of the preceding, we conclude that the jury would have understood that it was required to determine if Davis-Grant's arm was a deadly weapon as that was defined in the jury charge when determining whether he was guilty of the offense of aggravated robbery. *See Booker*, 712 S.W.2d at 857 (concluding that it is not necessary to redefine "deadly weapon" in application paragraph when it was defined in abstract portion of jury charge and that charge required jury to determine whether defendant used or exhibited deadly weapon before finding defendant guilty of aggravated robbery); *see also Stokes v. State*, 74 S.W.3d 48, 51 (Tex. App.—Texarkana 2002, pet. ref'd) (providing that absent evidence to contrary, reviewing courts must presume jury followed and understood jury instructions). Therefore, we conclude that there was no error in the jury charge.

---

[3] When asserting that there was error in the jury charge, Davis-Grant refers to an opinion by one of our sister courts of appeals. *See Blanson v. State*, 107 S.W.3d 103 (Tex. App.—Texarkana 2003, no pet.). However, we believe that case is distinguishable. In *Blanson*, the abstract portion of the jury charge included an instruction specifying that "[a] knife is a deadly weapon" even though knives are not deadly weapons per se and did not include an instruction setting out the definition of a deadly weapon. *Id.* at 105. In the current case, the abstract did not state that an arm is a deadly weapon and included the definition for a deadly weapon.

For these reasons, we overrule Davis-Grant's second issue on appeal.

## CONCLUSION

Having overruled both of Davis-Grant's issues on appeal, we affirm the trial court's judgment of conviction.

_____
Thomas J. Baker, Justice

Before Chief Justice Byrne, Justices Baker and Kelly

Affirmed

Filed:   October 8, 2021

Do Not Publish